## Wetter, to use, *versus* Kiley.

1. A suit upon a promissory note which waived the right to appeal was referred to arbitrators, who found for plaintiff. The defendant appealed and after the entry of the appeal plaintiff's counsel obtained from the counsel of the defendant a plea which was duly filed in the cause. The plaintiff subsequently obtained a rule to strike off the appeal: *Held*, that the action of plaintiff's counsel was an unqualified recognition of the defendant's right to be in court as an appellant, was as effectual as a waiver of a right to quash, and that the rule was properly discharged.

2. The maker of non-negotiable paper may defeat a recovery upon it in the hands of a third party, to whom it has been transferred for a valuable consideration, by setting up the want of consideration, although the maker may have given it to the payee for the express purpose of enabling him to negotiate it and obtain money thereon for his own accommodation.

October 18th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Clarion county:* Of October and November Term 1880, No. 74.

Assumpsit by Henry Wetter, to the use of the First National Bank of Clarion, against J. B. Kiley, upon the following promissory note:—

$2000.                                Clarion, Pa., Feb. 5th 1878.

Ninety days after date I promise to pay to the order of Henry Wetter, two thousand dollars, at the First National Bank of Clarion, Pa., without defalcation for value received. If not paid at maturity waiving exemption, inquisition, appeals, without stay of execution, and with five per cent. attorney's commission.

(Signed)                                J. B. KILEY.

Endorsed as follows:—

For value received, I assign the within note to the First National Bank of Clarion, and guarantee the payment of same at maturity.

(Signed)                                H. WETTER.

After suit brought, the plaintiff entered a rule of reference under the compulsory arbitration law, and on the 12th of October 1878, obtained an award against the defendant for $2153.90, the amount

[Wetter *v.* Kiley.]

of the note and interest. On the 24th of October 1878, the defendant appealed from the award. On the 5th of November 1878, the defendant pleaded non-assumpsit, payment with leave, &c. It was admitted by plaintiff's attorneys, that on the 5th of November 1878, the plea in this case, as it appears of record, was written by them down to the words "non-assumpsit," and handed to defendant's attorneys for the purpose of obtaining a plea in the case as it appears upon the record. The defendant's attorney added all the words after the word "pleads," and the same day filed same in the case. On the 14th of November 1878, the plaintiff moved to strike off and quash the appeal, because the right of appeal was waived by defendant, as appeared by the copy of the note filed with the declaration under rule of court, On this motion a rule to show cause was granted, and afterwards, on the 10th of April 1879, discharged.

At the trial, before Jenks, P. J., it appeared that the note in suit was the renewal of a note given by Kiley to Wetter for the accommodation of the latter, without any consideration whatever, and that Wetter had expressly agreed that he would take care of the note. Kiley stated the transaction in the following language : "Major Wetter came along and said he had bought the Sligo tract, was using a great deal of money, and would like to borrow my note, and I loaned him the note. He said I would not hear of it again, and that when the note came due he would attend to it."

The plaintiff's third point, which the court refused, was as follows :—

" That if the defendant, Kiley, executed and delivered to H. Wetter the note on which suit is brought for the express purpose of enabling Wetter to negotiate and obtain the money on it from any one to whom Wetter could negotiate it, and Wetter, in pursuance of such express understanding, negotiated it to the bank for full value, the bank is entitled to recover the amount of the note and interest."

The defendant's fourth point, which the court affirmed, was as follows :—

" Such want of consideration as mentioned in third point would fatally affect the note in the hands of the equitable transferree, the First National Bank of Clarion ; and if the said bank, before it expended its money in the purchase of said note, was not induced to take it by the declaration of Kiley that it was a valid instrument and would be paid at maturity, there can be no recovery in this case."

In the general charge, the court, inter alia, instructed the jury :

" You will remember that the equity lies chiefly in this agreement that Wetter would see that the note was paid or protected. The bank would take the first note subject to that agreement, and the

[Wetter v. Kiley.]

defendant could plead it against Wetter, and could plead it against the bank.''

Verdict for defendant, and after judgment plaintiff took this writ and alleged that the court erred in discharging the rule to show cause why the appeal should not be quashed, in the answers to the above points, and in the foregoing portion of the charge.

*Wilson & Jenks*, for plaintiff in error.—The mere fact that plaintiff's counsel requested defendant's counsel to plead should not prejudice plaintiff's rights. The waiver should have been enforced and the appeal stricken off: Wynn v. Bellas, 10 Casey 160; Dawson v. Condy, 7 S. & R. 366; Case v. Dunmore, 11 Harris 93; Lauck's Appeal, 12 Harris 426; Bowman v. Smiley, 7 Casey 225.

One who lends his promissory note for the accommodation of another, lends his credit without any restriction as to the manner of its use, and a holder for value may recover, though he knew at the time he purchased that it was an accommodation-note and that there was no consideration therefor between the maker and the payee: Moore v. Baird, 6 Casey 138; White v. Hopkins, 3 W. & S. 99–101; Lewis v. Hanchman, 2 Barr 417; Walker v. Bank of Montgomery, 12 S. & R. 382; Rogers v. Playford, 2 Jones 181. The same doctrine as applied to a specialty is discussed and recognised in the case of Taylor v. Gitt, 10 Barr 428–431.

This note, though not negotiable, is governed by the same rule. The credit given to the payee is sufficient consideration to the maker, and the maker having put the note in the power of the payee to raise money thereon, he is estopped from defending against one who has taken it bona fide in pursuance of this original purpose. With an agreement between the original parties inconsistent with the purport or legal effect of the instrument, the assignee has nothing to do: Davis v. Barr, 9 S. & R. 137; Hind v. Holdship, 2 Watts 104; Harris v. Page, 3 Whart. 275; Louden v. Tiffany, 5 W. & S. 367; Diamond v. Lawrence Co., 1 Wright 353; Thomas v. Commissioners, 8 Casey 218.

*Knox & Maffett*, for defendant in error.—One cannot object to an appeal after he has done an act admitting its validity: Heckert's Appeal, 13 S. & R. 105; Wilson v. Keely, 2 W. N. C. 482; D. & H. Canal Co. v. Loftus, 21 P. F. Smith 420; Brown v. Jones, 7 Watts 433. The note in suit, containing a five per cent. clause, is non-negotiable: Woods v. North et al., 3 Norris 407. The assignee of a chose in action, not negotiable, takes it subject to all the defences to which it was subject in the hands of the assignor: Rider v. Johnson, 8 Harris 190; Miller & Reist v. Kreiter, use of Bomberger, 26 P. F. Smith 78; 1 Daniel on Negotiable Inst. 553–4–5; Bowers v. Hastings et al., 12 Casey 235; Edgar v. Klein, 6 Barr 327; Weaver v. McCorkle, 14 S. & R.

304; Weaver *v.* Lynch, 1 Casey 449; Ashton's Appeal, 23 P. F. Smith 153; Buchanan *v.* Wurtz, 5 Watts 151; Keagy et al. *v.* Commonwealth, 7 Wright 70; Jaques *v.* Montgomery, 5 Am. R. 168.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1880.

We cannot say that the court below did wrong in refusing to quash the appeal from the award of arbitrators. It is true, the defendant's agreement, waiving the right of appeal, might have been enforced had an attempt in that direction been made at the proper time. But it is no less true, that the payee of the note, in which that agreement is found, might waive, by his laches, his right to enforce it. In the case of the Delaware and Hudson Canal Co. *v.* Loftus, 21 P. F. Smith 418, it was held, that acquiescence in an appeal may be inferred from an appearance by the plaintiff, acceptance of pleas and a delay in moving to quash until the third term. Substantially the same doctrine will be found in Heckert's Appeal, 13 S. & R. 104. In Steck *v.* King, 3 Barr 211, a motion to quash an appeal was held to be too late after the plaintiff had filed his *narr.*; and in Brown *v.* Jones, 7 Watts 433, it was said, per curiam, that after a plea, the motion to quash is too late.

In the case under consideration, as to time, the plaintiff was sufficiently prompt, but some time before the motion to quash the attorneys of the plaintiff made application to the attorneys of the defendant, and obtained from them a plea, which was duly filed. This was a direct and unqualified recognition of the defendant's right to be in court as an appellant, and was, certainly, as effectual as a waiver of the right to quash, as any mere delay could have been, and yet, as we have seen, delay of itself will bar such right. A rule such as this may be regarded as over strict and technical, but it has its foundation in the fact that courts are properly jealous of anything which tends to prevent trials by jury, and, hence, will take advantage of even mere technicalities in order to favor that right.

The remaining assignments of error may be discussed together, as they involve a single principle—the right of the maker of non-negotiable paper to defeat a recovery on it, in the hands of a third party to whom it has been assigned, for a valuable consideration, by setting up the want of consideration or any equitable condition to which it was subject when in the hands of the payee. The note in suit was the third renewal of an original, executed by the defendant to Wetter, the legal plaintiff, on the 19th of May 1877. Admittedly, it was made for the accommodation of the plaintiff— the parties, at the time, no doubt thinking it was negotiable, since it was intended that Wetter should have it discounted for his own

[Wetter v. Kiley.]

purposes. Wetter, at the time he received the note, agreed, which indeed, would follow as of course, that he would, in commercial parlance, take care of this paper.

Under these circumstances the court was asked to say to the jury, that if Kiley executed and delivered this note to Wetter for the express purpose of enabling him to negotiate and obtain money on it, the bank, to which it was passed, could recover. The court refused so to charge, and in this, we think, they did right. In the first place, the note was not negotiable; it could pass only by assignment, and that assignment would convey to the assignee only that which the payee was entitled to receive from the maker after settlement of all accounts and equities between them. Paper of this kind falls into the same class with bonds and other specialties, of which it is said, by Chief Justice SHIPPEN, in a note to the case of Rousset v. The Ins. Co., 1 Binn. 433, if the obligor had, before the assignment, which was made under the terms of the Act of 28th of May 1715, any just demand against the obligee, which he might have set up against him had there been no assignment, he might, in like manner, set it off against the assignee, who takes the bond subject to all the equities existing between the parties before the assignment. This rule, he says, is, however, subject to one exception. "If the assignee, when he is about to take the assignment, calls upon the obligor to know whether the whole money is due, and the obligor tells him it is a good bond, but is entirely silent as to any claim of his against the bond, he can never afterwards open his mouth against the demand of the assignee."

So, in Rider v. Johnson, 8 Harris 190, it was held that the assignee of a chose in action, not negotiable, takes it subject to all the defences to which it was subject in the hands of the assignor, including set off of cross demands, legal or equitable. We also find it ruled in Weaver v. Lynch, 1 Casey 449, that in order to estop the obligor of an assigned bond from setting up a defence, the assignee must show that he was induced to take the bond specially through the declarations of the obligor that he had no defence. Now, without multiplying authorities upon points about which there ought to be no dispute, we are at a loss to see how Kiley estopped himself from setting up a defence which was certainly good against Wetter. No declarations of his to the bank officers induced them to take this paper; on the other hand, if we consult the assignment, it was taken on the guaranty of Wetter that he would pay it when due. Let it be, then, that Kiley gave this note to Wetter for the express purpose of enabling Wetter to raise money upon it. This was, after all, but a private arrangement between the parties which was never communicated to the officers of the bank; they never acted upon any such understanding; how then can they set up to estop the defendant, a transaction to which their corporation was not a party, and of which

14 NORRIS—30

[Wetter *v.* Kiley.]

they, when they took the assignment, knew nothing.   Besides this, the duty of inquiry rested upon them, and had they made that inquiry, they would have discovered just what was found by the jury, that not only was the note drawn to Wetter in order that he might raise money on it, but that he, at the same time, had agreed to pay it when it fell due.   Had the bank known this fact when it took the assignment, no one, we apprehend, will pretend to say that it could, nevertheless, hold Kiley, and yet, on all authority, it was its duty, through inquiry of Kiley, to have known this very fact, and if it did not have this knowledge, the fault was with its own officers and no one else.

Judgment affirmed.

Chief Justice SHARSWOOD and Justice PAXSON, dissented.