## Kinney v. The Travelers Insurance Companies

*Barbara L. Smith,* for plaintiff.
*Robert S. Bailey,* for defendant.

THOMAS, *P.J.,* April 24, 1981—This is an assumpsit action brought by the surviving spouse of a motor vehicle accident victim to recover that decedent's work loss benefits in accordance with the terms of the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] Although a survivor's basic right to recover such work loss benefits has been affirmatively decided by the Supreme Court in Allstate Insurance Co. v. Heffner, 491 Pa. 447, 421 A. 2d 629 (1980), this action raises various issues incidental to, and thus undecided by, the Heffner opinion.

---

1. Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq., hereinafter referred to as the No-fault Act.

## FACTS

Plaintiff is the surviving spouse of Roy E. Allen, who was fatally injured in an automobile accident of February 27, 1977. At the time of his death, Allen was insured by defendant, Travelers Insurance Companies, in accordance with the terms of the No-fault Act.

Plaintiff subsequently applied for benefits under decedent's policy, claiming funeral expenses, survivor's loss and work loss benefits. Defendant paid the claimed funeral expenses and survivor's loss but denied the work loss benefits. Thereafter, plaintiff filed this action in assumpsit to recover the work loss benefits and has now moved for summary judgment.

## DISCUSSION

We note initially that the entry of summary judgment is proper here in that there exists no genuine issue as to any material fact: Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968). Instead, only the controlling principles of law are in dispute.

The thrust of defendant's contention is that the Heffner decision, supra, should be applied prospectively only; thus only the survivors of deceased victims killed after the September 22, 1980 filing date of that opinion could recover work loss benefits. Contending that a work loss benefit for deceased victims was not clearly evident from the face of the No-fault Act, defendant alleges that the retroactive inclusion of that type of loss would be grossly unfair to the insurance industry because the current rate structures do not anticipate such losses.

We are unpersuaded by defendant's contentions. The Supreme Court in Heffner, supra, did not

create a new right to work loss benefits but rather decided an issue of statutory construction not previously decided by that court. It is axiomatic that such an interpretation of legislative intent is regarded as part of a statute from the time the statute was first enacted: Daniels v. State Farm Mutual Automobile Insurance Company, 283 Pa. Superior Ct. 326, 423 A. 2d 1284 (1980); Harry C. Erb, Inc. v. Schell Construction Co., Inc., 206 Pa. Superior Ct. 388, 213 A. 2d 383 (1965).

Indeed, the Superior Court in Daniels, supra, in commenting upon its own ultimately affirmed decision in Heffner states, at 283, 423 A. 2d 1288:

"Thus, our decision in Heffner did not create a new right to work loss benefits. *That right existed all along.* Contrary to appellee's suggestion, in Heffner we did not redefine survivor's loss; we simply analyzed the distinctions between work loss and survivor's loss, noting that in the case of a deceased victim the work loss claim is comparable to a survival action and the survivor's loss claim is comparable to a wrongful death action. 265 Pa. Super. at 181; 401 A. 2d at 1164-1165 . . . ."(Emphasis supplied.)

Accordingly, we find plaintiff herein entitled to recover the victim's work loss benefits because that victim was killed subsequent to the enactment of the No-fault Act.

Secondly, defendant contends that if indeed work loss benefits are owed to this plaintiff, such benefits are due in monthly installments only and not in a lump sum. The thrust of defendant's contention here is that a dead victim should be treated in the same manner as a living victim who would receive work loss benefits monthly as the loss accrues.

Again, defendant's contentions are unpersua-

sive. Section 106 of the No-fault Act[2] states that "(a) In general.—(1) No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained . . . "

Obviously a live victim must be paid in monthly installments as actual loss accrues because his ultimate scope of damages and accompanying no-fault benefits are incalculable at the time of original injury. Conversely, when a victim has been killed, the scope of his damages and offsetting no-fault benefits are both instantly and forever fixed. Accordingly, we hold that defendant herein is immediately obligated to pay the entire lump sum amount of work loss benefits due to this plaintiff.

Thirdly, defendant contends that interest and attorney's fees cannot be awarded to this plaintiff because defendant's failure to pay is reasonable in light of the confusion surrounding work loss benefits and their testing in the appellate courts.

As to interest, section 106 of the no-fault act provides that overdue payments bear interest at the rate of 18 percent annually. Generally a payment is overdue if not paid within 30 days after the receipt by the insurer of reasonable proof of the fact and amount of loss, regardless of the "good faith" of the insurer or "reasonable cause" for the delay in payment: Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A. 2d 419 (1981).

In the case at issue here, plaintiff submitted her claim for decedent's work loss benefits on October 11, 1979. Accordingly, she contends that payment of those benefits was overdue and thus subject to 18 percent interest since November 11, 1979.

However, in fairness to defendant, we are mind-

---

2. 40 P.S., §1009.106.

ful of the clouds of confusion which surrounded this plaintiff's right to recover her decedent's work loss benefits in November, 1979. Accordingly, we find that the benefits at issue here were not overdue until 30 days after the clouds of confusion were lifted by the Supreme Court's decision in Heffner, supra, filed September 22, 1980.[3] Interest will thus be assessed at 18 percent annually from October 22, 1980, on the entire amount due.

As to attorney's fees, section 107(3) of the No-fault Act[4] provides that: "(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

Certainly defendant here had "reasonable foundation" to deny this claim while Heffner was wending its way through the appellate courts. However, since the September 22, 1980 filing date of the Supreme Court's opinion in Heffner, we find that defendant has denied this claim without "reasonable foundation." Accordingly, pursuant to plaintiff's affidavit of attorney's fees expended, we will award all such fees incurred after September 22, 1980, amounting to $1,590.

## ORDER

And now, April 24, 1981, summary judgment is entered in favor of plaintiff against defendant for $15,000 in work loss benefits plus interest at 18

---

3. We are informed by the Prothonotary of the Supreme Court that no petition for reargument was filed in Heffner, supra, within the allowable 14 days after decision.

4. 40 P.S., §1009.107(3).

percent on said amount since October 22, 1980, and the additional sum of $1,590 in attorney's fees.